IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MARY JEAN ZINK, as Administratrix**
**ov the Estate of William Henry**
**Zink, Jr.,**

      **Plaintiff,**

**v.**　　　　　　　　　　**// CIVIL ACTION NO. 5:14CV25**
　　　　　　　　　　　　　　　　**(Judge Keeley)**

**JOHN DOE, TARGET CORPORATION,**
**a Minnesota corporation,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 10]**

Pending before the Court is the motion to remand filed by the plaintiff, Mary Jean Zink ("Zink"). (Dkt. No. 10). For the reasons that follow, the Court **DENIES** Zink's motion.

**I. PROCEDURAL HISTORY**

On January 22, 2014, Zink sued the defendants, John Doe and Target Corporation ("Target")(collectively, "the defendants"), in the Circuit Court of Ohio County, West Virginia. The defendants subsequently removed the action to this Court on February 21, 2014, in accordance with 28 U.S.C. §§ 1332, 1441, and 1446. (Dkt. No. 1).

On March 19, 2014, Zink filed the instant motion to remand this case to state court, asserting that the defendants have not met their burden in establishing that the amount in controversy exceeds $75,000. The motion is now fully briefed and ripe for review.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 10]**

### II. FACTUAL BACKGROUND

This action arises from an accident that occurred on August 24, 2013 at a Target store located in Ohio County, West Virginia. Zink alleges that, while shopping at a Target store, her husband, William H. Zink, JR. ("the decedent"), was struck and knocked down by shopping carts that were negligently driven into him by a Target employee. The decedent later died as a result of the injuries he sustained during that accident.

Zink now seeks to recover the following damages:

a. Physical pain, mental and emotional anguish, annoyance, inconvenience, and a diminishment of the ability to function fully and enjoy life suffered by the decedent;

b. Loss of consortium by Mary J. Zink due to the effects of the premature death of her husband;

c. Expenses for medical treatment rendered to the decedent prior to his death;

d. Funeral expenses;

e. Sorrow, mental anguish and solace, including the loss of society, companionship, comfort, guidance, kindly offices, and advice, loss of services, care, protection and assistance suffered by Mary J. Zink as a result of the death of her husband, William H. Zink, Jr.;

f. Punitive damages in order to punish the Defendants and deter them and other individuals from engaging in similar conduct in the future; and

g. Costs, expenses, and attorney's fees, including pre- and post-judgment interest. (Dkt. No. 1).

### III. LEGAL STANDARD

A party may remove to federal court any state "civil action where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States." 28 U.S.C. §§ 1332(a), 1441(a). When an action is removed from state court, a federal district court must determine whether it has original jurisdiction over the plaintiff's claims. Kokkonen v. Guardian Life Ins. Co. Of Am., 511 U.S. 375, 377 (4th Cir. 1994). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." Id.

Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331 and (2) those involving diversity of citizenship under 28 U.S.C. § 1332. When a party seeks removal based upon diversity of citizenship under 28 U.S.C. § 1332, that party bears the burden of establishing "the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states." 28 U.S.C. § 1332.

### IV. ANALYSIS

The parties do not dispute diversity of citizenship. Thus, the only question for the Court to determine is whether the amount in controversy is met.

In Zink's motion to remand, she argues that the defendants cannot meet their burden of proving the amount in controversy. The defendants respond that, based upon the damages sought in this case, the amount in controversy exceeds the $75,000 threshold.

In a removal action that premises jurisdiction upon 28 U.S.C. § 1332, the defendant bears the burden of establishing that removal jurisdiction is proper. Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008). If a complaint "does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [$75,000].'" Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013) (quoting De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993)). In order to meet the preponderance of the evidence standard and establish that removal is proper, "a defendant must show that it is more likely than not that the amount in controversy exceeds the jurisdictional amount." Heller v. TriEnergy, Inc., No. 5:12-CV-45, 2012 WL 2740870 (N.D. W. Va. July 9, 2012).

4

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO REMAND [DKT. NO. 10]**

"The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties. Lanier v. Norfolk S. Corp., 256 F. App'x 629, 631-32 (4th Cir. 2007) (quoting Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448-49 (7th Cir. 2005)). "[T]he test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" Dixon v. Edwards, 290 F.3d 699 (4th Cir. 2002) (quoting Gov't Employees Ins. Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964)). "The amount in controversy, if not specified in the complaint, must be determined on the likely monetary relief that may be granted to the plaintiff if [she] succeed[s] on all of [her] claims asserted in good faith." Judy v. JK Harris & Co. LLC, 2011 WL 4499316 (S.D. W. Va. Sept. 27, 2011) (Johnston, J.) (citing Landmark Corp., 945 F.Supp. at 936-37 (S.D. W. Va. 1996); Mullins v. Harry's Mobile Homes, Inc., 861 F.Supp. 22, 24 (S.D. W. Va. 1 994) (citing 14A Charles Alan Wright, et al., Federal Practice and Procedure § 3725 at 423-24 (1985))).

"The removability of a case 'depends upon the state of the pleadings and the record at the time of the application for removal. . . ." Francis v. Allstate Insurance Co., 709 F.3d 362, 367 (4th Cir. 2013) (quoting Alabama Great S. Ry. Co. v. Thompson,

200 U.S. 206, 216 (1906)). In evaluating whether the amount in controversy has been satisfied, the court may consider:

> the type and extent of the plaintiff's injuries and the possible damages recoverable therefore, including punitive damages if appropriate. The possible damages recoverable may be shown by the amounts awarded in other similar cases. Another factor for the court to consider would be the expenses or losses incurred by the plaintiff up to the date the notice of removal was filed. The defendant may also present evidence of any settlement demands made by the plaintiff prior to removal although the weight to be given such demands is a matter of dispute among courts.

Kenney v. Indep. Order of Foresters, No. 3:12-CV-123, 2012 WL 6149171, *2-3 (N.D. W. Va. Dec. 11, 2012) (quoting Watterson v. GMRI, Inc., 14 F. Supp. 2d 844, 850 (S.D. W. Va. 1997)).

Here, Zink seeks to recover economic damages for hospital and funeral expenses incurred on behalf of the decedent. According to a recent study by the Kaiser Family Foundation, hospital expenses per inpatient day in West Virginia averaged $1,316 in the year of 2011. Kaiser Family Foundation, "Expenses Per Inpatient Day" http://kff.org/other/state-indicator/expenses-per-inpatient-day/(2011). Thus, if the decedent had been hospitalized for the twelve days prior to his death, the average daily cost for his hospitalization would likely exceed $15,000, exclusive of costs for medical tests and physician services.

Furthermore, according to a Federal Trade Commission study, a traditional funeral costs between $6,000 and $10,000. Federal Trade Comm'n, "Facts for Consumers," http://www.ftc.gov/bcp/edu/pubs/consumer/products/pro19.shtm (Nov. 24, 2009). Thus, a conservative estimate of the economic damages at issue in this case likely exceeds $25,000.

Zink also seeks to recover for a number of non-economic damages, including:

- Physical pain suffered by Mr. Zink as a result of his broken hip for twelve days;

- Mental and emotional anguish suffered by Mr. Zink for twelve days;

- Annoyance, inconvenience, and a diminishment of the ability to function fully and enjoy life suffered by Mr. Zink prior to his death;

- Loss of consortium by Mary J. Zink due to the disability and subsequent death of her husband; and

- Mrs. Zink's sorrow, mental anguish and solace, including the loss of society, companionship, comfort, guidance, kindly offices, and advice, loss of services, care, protection and assistance suffered by her.

Non-economic damages, while difficult to quantify, can make up the bulk of the recovery in a wrongful death case. Here, the Zink's were married for over 30 years, which will likely increase an award for loss of consortium. Further, the decedent was an outstanding citizen and family man. He was a

7

U.S. Army veteran, and long-time volunteer of both the Valley Grove Lions Club and Volunteer Fire Department, and was the Mayor of Valley Grove for 18 years. He is survived not just by his wife, but also numerous children, step-children, grandchildren, and great-grandchildren. These factors will likely considerably increase any award of damages in favor of Zink.

Finally, Zink also asserts a good faith claim for punitive damages. Multiple courts have considered a plaintiff's good faith claim for punitive damages in their amount in controversy calculations. See Heller, 2012 WL 2740870 at *10 (noting that the punitive damages played a role in determining that the action more likely than not involved more than $75,000); Bryant v. Wal-Mart, 117 F.Supp. 2d 5550556-57 (S.D.W.Va. Oct. 20, 2000) ("A good faith claim for punitive damages may augment compensatory damages in determining the amount in controversy unless it can be said to a legal certainty that plaintiff cannot recover punitive damages in the action.").

If punitive damages are supported in this action, the financial position of the defendants, including Target's

extensive revenue and assets, would become relevant to a determination of their amount. Garnes v. Fleming Landfill, Inc., 413 S.E.2d 897, 909 (W. Va. 1991). Thus, punitive damages assessed against the defendants may easily exceed $75,000. The defendants have therefore adequately established that it is more likely than not that the jurisdictional amount is met in this action.

## V. CONCLUSION

For the reasons discussed, the Court **DENIES** Zink's motion to remand.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: May 1, 2014

/s/ Irene M. Keeley

IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE